IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA A. MCHENRY,

                Plaintiff,                          CV-08-562-ST

      v.                                  OPINION AND
                                                  ORDER

PACIFICSOURCE HEALTH PLANS, and THE
METRO AREA COLLECTION SERVICE, INC.
GROUP HEALTH/DENTAL PLAN,

                      Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Lisa A. McHenry ("McHenry"), is a participant in the Metro Area Collection

Service, Inc. ("Metro Area Collection") Group Health/Dental Plan ("the Plan"), which is insured

by defendant PacificSource Health Plan ("PacificSource"). She brings this action under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §§ 1001-1461, to obtain

coverage for Applied Behavioral Analysis ("ABA") therapy received by her minor son, J.M., to

treat his autism beginning January 2007.

1 - OPINION AND ORDER

This court has jurisdiction under 29 USC § 1132(c).  All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

McHenry has filed a Motion for Partial Summary Judgment (docket #13) to resolve what standard of review applies to PacificSource's decision to deny her claim.  McHenry contends that judicial review should be *de novo* because the Plan does not unambiguously grant PacificSource the discretionary authority to interpret terms and make benefits decisions.  For the reasons stated below, McHenry's motion is granted.

## LEGAL STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The

court must view the inferences drawn from the facts "in the light most favorable to the

nonmoving party."  *Id* (citation omitted).

<u>**UNDISPUTED FACTS**</u>

At all relevant times, McHenry was an employee of Metro Area Collection which is

insured by PacificSource.  Her son, J.M., is an eligible dependent as defined in the Plan.  The

Plan is a fully-insured employee welfare benefits plan specifically covered under ERISA, 29

USA §§ 1002(1) and 1003(a).  Metro Area Collection is the sponsor of the Plan within the

meaning of ERISA, 29 USC § 1002(16)(B), and also is the administrator of the Plan under

29 USC § 1002(16)(A).  The Plan documents include the Group Policy of Medical, Surgical, and

Hospital Insurance ("Policy") and the Member Benefit Handbook, also referred to as the

Summary Plan Description ("SPD").

The SPD expressly gives PacificSource the "discretionary authority to determine

eligibility for benefits under the plan and to interpret the terms of the plan."  GraVette Aff.,

Ex. 2, p. 53.  The Policy, however, does not contain this same language.  The SPD also states

that in the event of "a conflict between this benefit handbook [SPD] and the group health

contract [Policy], this plan will pay benefits according to the contract [Policy] language."

McHenry Aff. ¶ 4 and Ex. 2, p. 1.

McHenry's son, J.M., was diagnosed with autism in May 2006.  In November 2006,

McHenry submitted a request through J.M.'s pediatrician for coverage under the Plan for 25 to

40 hours per week of ABA therapy for J.M.

In January 2007, J.M. began receiving approximately 20 hours per week of ABA therapy.

In June 2007, PacificSource notified McHenry of its decision to deny coverage for that ABA

therapy because:  (1) it constitutes academic or social skills training which is excluded from

coverage under the Plan, and (2) the ABA provider was not an eligible provider under the Plan.

On June 29, 2007, McHenry submitted to PacificSource a written grievance of their denial of her

claim for coverage.  PacificSource upheld its denial of coverage by letters dated August 2 and

28, 2007.  Glor Decl., Exs. A & B.  McHenry appealed that denial to the PacificSource

Membership Rights Panel which upheld the denial on November 21, 2007.  *Id*, Ex. D.  McHenry

then submitted a written request to the Independent Medical Expert Consulting Services

("IMEDECS") to review PacificSource's denial of her claim.  IMEDECS sent McHenry a letter

dated December 12, 2007, denying her request for review.  *Id*, Ex. E.  McHenry then filed this

lawsuit.

## ANALYSIS

McHenry contends that the standard of review should be *de novo* because:  (1) the SPD is

not a valid amendment to the Policy; and (2) even if a conflict exists between the Policy and the

SPD, the Policy controls.  PacificSource responds that the SPD is enforceable and controls over

a silent Policy, and, in any event, no conflict exists between the Policy and SPD.  Accordingly,

PacificSource urges the court to employ the arbitrary and capricious standard of review.

**I.    Legal Standards**

ERISA does not specify a standard of review.  Filling that statutory gap, courts apply

either a *de novo* or an arbitrary and capricious standard of review, depending on whether the

administrator has the discretion to interpret the terms of the plan or make benefits

determinations.  A denial of benefits is reviewed *de novo* "unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan." *Firestone Tire & Rubber Co. v. Brunch*, 489 US 101, 115

(1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F3d 955, 962-63 (9th Cir 2006) (*en banc*).

However, if the plan vests the administrator with such discretionary authority, then the court

reviews the plan administrator's decision only for an abuse of discretion. *Firestone Tire &*

*Rubber Co.*, 489 US at 115. The term "arbitrary and capricious" also describes this deferential

standard of review. *See Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F2d 889, 894 (9th Cir

1990).

No deference to the plan administrator is given under *de novo* review. In contrast, under

the arbitrary and capricious standard of review, an administrator's decision "is not arbitrary

unless it is 'not grounded on any reasonable basis.'" *Horan v. Kaiser Steel Ret. Plan*, 947 F2d

1412, 1417 (9th Cir 1991) (emphasis in original), quoting *Oster v. Barco of Cal. Employees' Ret.*

*Plan*, 869 F2d 1215, 1219 (9th Cir 1988). Also, an arbitrary and capricious standard of review

limits the court's consideration to the evidence reviewed by the plan administrator at the time the

eligibility decision was made. *McKenzie v. Gen. Tel. Co. of Cal.*, 41 F3d 1310, 1316 (9th Cir

1994), *cert denied* 514 US 1066 (1995); *Taft v. Equitable Life Assur. Soc.*, 9 F3d 1469, 1471 (9th

Cir 1993).

Which standard of review applies depends primarily upon the terms of the plan. A plan

confers discretion when it "includes even one important discretionary element, and the power to

apply that element is unambiguously retained by its administrator." *Bogue v. Ampex Corp.*, 976

F2d 1319, 1325 (9th Cir 1992), *cert denied* 507 US 1031 (1993). The grant of discretion "should

be clear: unless plan documents unambiguously say in sum or substance that the Plan

Administrator or fiduciary has authority, power, or discretion to determine eligibility or to

construe the terms of the Plan, the standard of review will be *de novo*." *Sandy v. Reliance Standard Life. Ins. Co.*, 222 F3d 1202, 1207 (9th Cir 2000). The authority to determine eligibility for benefits "inherently confers discretion" upon the plan administrator. *Snow v. Standard Ins. Co.*, 87 F3d 327, 330 (9th Cir 1996).

## II.    Whether the SPD Amended the Policy

McHenry argues that the SPD is not binding because it was an improper amendment to the Plan. In order to amend the Plan, PacificSource must follow an established protocol. McHenry Aff. ¶ 4 and Ex. 2, p. 13. The amendment procedure requires a 30-day notice to the employer that the policy will be changed. *Id*, pp. 5-7. The amendment then is accepted either by paying the premium after receiving notice or by failing to reject the changes within 15 days before the modification. GraVette Aff., Ex. 1, p. 21.

The SPD relied on by McHenry became effective November 1, 2007, after adoption of the Plan. McHenry Aff., Ex. 1. However, another SPD effective November 1, 2004, was issued with the initial purchase of the Plan by Metro Area Collection. GraVette Aff., ¶ 4 & Ex. 2. That earlier SPD contained the same grant of discretionary authority to PacificSource as the later SPD. As a result, any failure to follow the proper amendment protocol for the later SPD is not germane to this court's analysis.

## III.    Whether the Policy and the SPD Conflict

McHenry argues that the Policy and the SPD materially conflict because the SPD, unlike the Policy, contains a sentence granting PacificSource discretionary authority. Therefore, McHenry urges this court to consider only the Policy when determining the proper standard of review.

When interpreting an ERISA plan, the plan documents must be construed as a whole.

*See Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F3d 1139, 1143 (9th Cir 2002)

(citations omitted). The SPD is part of the plan documents. *Id*, citing *Chiles v. Ceridian*, 95 F3d

1505, 1555 (10th Cir 1996). Since a court must consider both the terms in the policy and the

SPD, an issue arises when the two documents contain conflicting provisions. If the plan

documents contain a "material conflict," then a court may focus on one plan document instead of

construing the documents as a whole. *Bergt*, 293 F3d at 1143. The document more favorable to

the participant controls. *Id*, citing *Chiles*, 95 F3d at 1518.

Here the SPD contains language clearly granting PacificSource discretion, while the

Policy does not. The parties dispute whether this difference in language creates a material

conflict. For two reasons, PacificSource maintains that no conflict exists, such that the SPD

controls. First, it argues that silence in the Policy does not contradict the express terms of the

SPD. Alternatively, it posits that the Policy's numerous grants of discretion, in sum and

substance, put participants on notice that PacificSource had discretion to interpret the terms of

the Plan or make benefits determinations. This court rejects both arguments.

A.    <u>**When the Policy is Silent**</u>

PacificSource contends that the Ninth Circuit finds no material conflict when one

document merely omits a provision found in the other document. As support for that contention,

it cites only an unpublished case, *Helm v. Sun Life Assurance of Canada, Inc.*, 34 Fed Appx 328

(9th Cir 2002), which cites *Atwood v. Newmont Gold Co.*, 45 F3d 1317, 1321 (9th Cir 1995),

*overruled on other grounds*, *Abatie*, 458 F3d at 966-67. Because *Helm* is unpublished, it "is not

precedent and may not be relied upon." *Green v. Sun Life Assurance Co. of Canada*, 383

F Supp2d 1224, 1228 (CD Cal 2005).  Furthermore, *Atwood* is not on point; it held only that the

SPD controls only when the SPD fails to adequately explain how benefits could be lost or

diminished and differs materially from the term of the plan.  *Atwood*, 45 F3d at 1321.

More importantly, in both of those cases, the silent document was the SPD, not the

policy.  *Helm*, 34 Fed Appx at 332; *Atwood*, 45 F3d at 1321.  When the situation is reversed, as

here, with the Policy saying nothing about the standard of review and the SPD containing

discretionary language, courts do find a material conflict.  As recently explained by one court:

> [S]ilence on a topic in an SPD does not necessarily imply a conflict; in
> fact, courts have concluded the opposite. *See Jensen v. SIPCO, Inc.,* 38
> F3d 945, 952 (8th Cir 1994) (holding that silence in the SPD on the issue
> of whether benefits have vested does not override specific plan
> provisions); *Washington v. Standard Ins. Co.,* 2004 US Dist LEXIS 22975
> at *34 (ND Cal, July 27, 2004) ("Although the SPD does not include [the
> discretionary language], it contains no language to the contrary.").  The
> cases that Plaintiff cites in support of her contention that silence *is*
> indicative of a conflict involve the reverse situation, *i.e.*, the discretionary
> language is in the SPD, but the policy is silent.  *See Shaw v. Conn. Gen.*
> *Life Ins. Co.,* 353 F3d 1276, 1284 (11th Cir 2003); *Reinersten v. Paul*
> *Revere Life Ins. Co.,* 127 F Supp2d 1021, 1030 (ND Ill 2001) (stating that
> "unless the plan affirmatively grants discretion, then de novo review
> applies, even if the SPD provides otherwise."). The distinction is
> important because the policy is the contract between the plan
> administrator and the insurance company, while the SPD is a summary
> document for the benefit of the employees.

*Neathery v. Chevron Texaco Corp. Group Acc. Policy*, 2006 WL 4690902 *5 (SD Cal, July 31,

(emphasis in original); *also see Spangberg v. The Pepsi Bottling Group Long Term Disability*

*Plan*, 2006 WL 1529659, *10-11 (WD Wis, May 30, 2006); *Olson v. Comfort Systems USA*

*Short Term Disability Plan*, 407 F Supp2d 995 (WD Wis 2005); *Wolff v. Continental Casualty*

*Co.*, 2004 WL 2191579, *10-11 (ND Ill Sept 28, 2004).

That a silent policy creates no conflict with discretionary language in a SPD is based on the principle that the policy sets the terms of the relationship between the plan and the participants which the SPD cannot expand.

> As a general matter, courts construe benefit plans in favor of beneficiaries and against plan administrators.  If a participant relies on a provision in a summary that conflicts with the terms of a benefit plan, it is reasonable to hold the plan to the terms of its summary. . . The present case presents the reverse situation:  the provision in the summary favors the plan's administrator.  In this instance, holding that the language in the summary prevails over the silence in the plan would undercut one of the public policy goals underlying ERISA and harm the class of person the statute was intended to protect.

*Spangberg*, 2006 WL 1529659 at *11.

The Ninth Circuit has repeatedly held that when the plan documents conflict, the provision more favorable to the claimant controls.  *See Bergt*, 293 F3d at 1145-46.  Because the SPD "should simply summarize the relevant portions of the plan master document. . . , the law should provide as strong an incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master documents, a relatively simple task."  *Id* at 1145.  Thus, this court concludes, as have most courts, that the SPD cannot secure deferential judicial review when the Policy itself is silent.

**B**.    **Whether the Policy Grants Discretionary Authority**

In the alternative, PacificSource argues that the Policy and the SPD do not materially conflict since both grant discretionary authority to the plan administrator.  No magic words need appear in the plan document to confer discretion.  *See Abatie*, 458 F3d at 963 (citations omitted).  However, the language granting discretion must be unambiguous "in sum or substance."  *Sandy*, 222 F3d at 1207.  The Ninth Circuit has one of the most stringent standards to determine whether

language unambiguously grants discretionary authority.  Unlike some other circuits, it sees "great value in clarity."  *Id* at 1206.  "The default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision."  *Kearney v. Standard Ins. Co.*, 175 F3d 1084, 1089 (9th Cir 1999) (en banc).  An unambiguous grant of discretionary authority is one that is so clear it cannot be interpreted to have any other meaning.  *Id* at 1090.  "Neither the parties nor the courts should have to divine whether discretion is conferred.  It either is, in so many words, or it isn't.  For sure, there is no magic to the words 'discretion' or 'authority'– but we're not at Hogwarts."  *Sandy*, 222 F3d at 1207.

PacificSource points to numerous provisions in the Policy which it contends are sufficient to confer discretionary authority.  One such provision broadly states that PacificSource "may adopt policies, procedures, rules and interpretations to promote orderly and efficient administration of this agreement."  GraVette Aff., ¶ 3, Ex. 1, p. 23.  The use of the word "interpretations" does not mean that PacificSource has the discretionary authority to interpret all plan terms when making benefit determinations.  Instead, PacificSource is permitted only to adopt interpretations of the Policy that assist with its "orderly and efficient administration."  Benefit eligibility determinations do not fall into that category.

The Policy also allows PacificSource to exercise its "judgment" regarding exclusions for procedures or treatments deemed experimental, investigational, or not medically necessary.  These provisions are too narrow to demonstrate unambiguously that the Policy grants broad discretionary authority to PacificSource for all benefit eligibility determinations.  Many benefit

eligibility determinations do not implicate medical necessity or the investigational or experimental limitations.

The Plan also grants PacificSource the "final authority" in preauthorization determinations and case management decisions.  Preauthorization not only is inapplicable to all benefits, but also is not at issue in this case.  Moreover, "case management" may or may not be interpreted to include eligibility determinations.  These narrow provisions do not demonstrate an unambiguous intent to delegate to PacificSource discretionary authority over all benefit decisions.

In addition, PacificSource points to the following provision as triggering deferential review:  "PacificSource has the right to pay benefits for supplemental services not otherwise covered by this policy when [certain] conditions are met. . . Payment of benefits for supplemental services is at the sole discretion of PacificSource. . ."  GraVette Aff., Ex. 1, p. 58, ¶ 3.  An ability to pay supplemental benefits does not confer any discretionary authority to pay for services specifically covered by the Plan or to construe the Plan's terms.

No wording in this Policy, either in sum or substance, unambiguously grants the power to PacificSource to determine eligibility, to interpret the Plan's terms and to make binding benefits determinations, unlike other plan provisions held by the Ninth Circuit to confer such discretion. *Sandy*, 222 F3d at 1205-06 (collecting cases).  Therefore, the Policy, standing alone, is insufficient to put McHenry on notice that PacificSource possesses discretionary authority. Since PacificSource has failed to show its decision denying McHenry's claim for benefits is entitled to deference, the applicable standard of review in this case is *de novo*.

///

11 - OPINION AND ORDER

**<u>ORDER</u>**

For the reasons stated above, McHenry's Motion for Partial Summary Judgment (docket #13) is GRANTED and the *de novo* standard of review applies.

DATED this 5th day of March, 2009.

s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge