IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


LISA A. MCHENRY,                                                    CV-08-562-ST

                           Plaintiff,                              OPINION AND ORDER

        v.

PACIFICSOURCE HEALTH PLANS and THE
METRO AREA COLLECTION SERVICE, INC.
GROUP HEALTH/DENTAL PLAN,

_____Defendants._____

STEWART, Magistrate Judge:

## **INTRODUCTION**

        The parties previously filed motions for summary judgment which this court construed as

motions for judgment on the record pursuant to FRCP 52.  On January 5, 2010, the court granted

defendants' motion, denied plaintiff's motion, and entered judgment against plaintiff and in

favor of defendants (dockets #59 and #60).  On February 2, 2010, plaintiff, Lisa A. McHenry

1 - OPINION AND ORDER

("McHenry"), filed a Motion for Reconsideration pursuant to FRCP 59(a) (docket #64). For the reasons set forth below, McHenry's motion is granted. Upon reconsideration, this court finds that PacificSource breached its fiduciary duty to McHenry, but that further briefing is required to determine the consequences flowing from that breach.

## BACKGROUND

McHenry is a participant in the Metro Area Collection Service, Inc. Group Health/Dental Plan which is insured by defendant, PacificSource Health Plans ("PacificSource"). McHenry's minor son, J.M., was diagnosed with autism in May 2006, at the age of one year and nine months. On or about November 20, 2006, J.M.'s pediatrician submitted to PacificSource a request for coverage for Applied Behavioral Analysis ("ABA") therapy. In January 2007, J.M. began receiving ABA therapy from Emily Hoyt ("Hoyt"), a Board Certified Behavior Analyst ("BCBA"). That ABA therapy has been effective in treating J.M.'s autism but at a substantial cost.

Hoyt submitted invoices to PacificSource for payment of services provided to J.M. from January through April 2007. SR 16-18.[1] In June 2007, PacificSource, as claims administrator, denied payment of these billings for the first time, explaining that the "[p]rovider is not eligible on this plan." SR 16. For the next several months, McHenry submitted numerous appeals and supporting documentation and each time was denied coverage. *See* SR 54, 93, 351. After exhausting her remedies with PacificSource, McHenry brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC §§ 1001-1461, to compel coverage.

---

[1] "SR" refers to the stipulated record filed by the parties on May 22, 2009 (docket #46).

In support of their motions for summary judgment, the parties submitted a lengthy stipulated record documenting the exhaustive correspondence related to McHenry's appeals. In ruling on the summary judgment motions, the court found that in order to be eligible for reimbursement for J.M.'s treatment, ABA therapy must be medically necessary, a covered benefit under the 2007 Plan, and provided by an eligible provider. This court concluded that the ABA therapy is medically necessary to treat J.M.'s autism and that ABA therapy is a covered benefit not excluded as "experimental or investigational procedures," "academic skills training" or "social skills training" as those terms are defined by the 2007 Plan. However, the court found that McHenry is not entitled to reimbursement for the ABA therapy because she failed to establish that Hoyt is an eligible provider under the 2007 Plan. To be an eligible provider, Hoyt must be authorized to receive reimbursement under Oregon law.

With her request for reconsideration, McHenry has presented evidence that Hoyt is now authorized to receive reimbursement under Oregon law, thereby making her an eligible provider. McHenry claims that but for PacificSource's breach of its fiduciary duty, Hoyt would have been enrolled as a provider through the Oregon Department of Human Services ("ODHS") in mid-2007 and would have been qualified as an eligible provider under the 2007 Plan. In order to prevent a manifest injustice, McHenry urges the court to find that Hoyt is an eligible provider under the 2007 Plan, apply that eligibility retroactively, and amend the judgment accordingly.

## **STANDARD**

As a threshold issue, the Federal Rules of Civil Procedure do not recognize a motion for reconsideration. "A district court may reconsider its grant of summary judgment under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b)

(relief from judgment)," depending on when it is filed. *See Sch. Dist. N. 1J, Multnomah County v. ACands, Inc.*, 5 F3d 1255, 1263 (9th Cir 1993). If filed within 28 days after entry of judgment, it is treated as a motion to alter or amend the judgment under FRCP 59(e). If filed more than 28 days, but less than one year after entry of judgment, it is considered a motion seeking relief from the judgment under FRCP 60(b).

McHenry brings her motion for reconsideration pursuant to FRCP 59(a), which allows the court, after a nonjury trial, to grant a new trial on all or some of the issues. However, no court trial was held in this case. Instead, the court construed the parties' motions for summary judgment as motions for judgment on the record pursuant to FRCP 52 and made findings of fact and conclusions of law based upon the record. Because McHenry filed her motion on February 2, 2010, exactly 28 days after entry of judgment on January 5, 2010, the court will construe her motion for reconsideration as an FRCP 59(e) motion to alter or amend judgment.

A motion brought under FRCP 59(e) "should not be granted, absent highly unusual circumstances," unless the district court: (1) is presented with newly discovered evidence; (2) committed clear error or the initial decision was manifestly unjust; or (3) if there is an intervening change in the controlling law. *389 Orange Street Partners v. Arnold*, 179 F3d 656, 665 (9th Cir 1999), citing *Sch. Dist. N. 1J*, 5 F3d at 1263. "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll v. Nakatani*, 342 F3d 934, 945 (9th Cir 2003). Accordingly, "[a] district court has discretion to decline to consider an issue raised for the first time in a motion for reconsideration." *Novato Fire Prot. Dist. v. United States*, 181 F3d 1035, 1142 n6 (9th Cir 1999). "Whether or not to grant reconsideration is committed to the sound

discretion of the court." *Navajo Nation v. Confederated Tribes and Bands of the Yakima Indian Nation*, 331 F3d 1041, 1046 (9th Cir 2003), citing *Kona Ent., Inc. v. Estate of Bishop*, 229 F3d 877, 890 (9th Cir 2000).

## DISCUSSION

In the short time since the entry of judgment, McHenry has taken extraordinary steps to enroll Hoyt as an eligible provider through ODHS.  McHenry Aff. (docket #65), ¶¶ 1-9.  She contends that because PacificSource violated its fiduciary duty to clearly inform her of the basis for denying her claim and of the steps necessary to perfect the claim, Hoyt was not enrolled as an eligible provider in 2007.  Since Hoyt is now an eligible provider, McHenry urges this court to apply that eligibility retroactively.

Defendants respond that McHenry fails to present any newly discovered evidence within the context of FRCP 59(e) and impermissibly seeks to relitigate a matter already decided by the court.  In the alternative, they assert that no breach of fiduciary duty occurred because PacificSource complied with all the regulatory notice requirements.

As a preliminary matter, McHenry has established a proper ground under which this court should reconsider its previous decision, namely to prevent a manifest injustice.  McHenry's argument is precisely the type of "highly unusual circumstances" which may support reconsideration. Thus, the court will reconsider whether PacificSource breached a fiduciary duty, and if so, whether that breach constituted a manifest injustice.

## I.  PacificSource's Fiduciary Duty

PacificSource, as an ERISA insurer, is held to a fiduciary standard of care.  *Firestone v. Bruch*, 489 US 101, 113 (1989).  This duty requires claim administrators to give the insured

"specific reasons" for any denial and afford an opportunity for a "full and fair review" of the

denial decision.  29 USC § 1133.  The regulations further require that the claim denial must

contain:

> (i) The specific reasons for the adverse determination;
> (ii) Reference to the specific plan provisions on which the determination is based;
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
> (iv)  A description of the plan's review procedures . . .

29 CFR § 2560.503-1(g)(1).

The Ninth Circuit has explained that:

> In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.  If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.  There is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters.

*Booton v. Lockheed Medical Benefit Plan*, 110 F3d 1461, 1463 (9th Cir 1991).

The provisions in 29 CFR § 2560.503-1(g)(1) are "designed to afford the beneficiary an

explanation of the denial of benefits that is adequate to ensure meaningful review of the denial,"

and "enable the claimant to prepare adequately for any further administrative review, as well as

appeal to the federal courts."  *Vizcano v. Microsoft Corp.*, 120 F3d 1006, 1016 (9th Cir 1997),

quoting *Halpin v. W.W. Grainger, Inc.*, 962 F2d 685, 689 (7th Cir 1992) (internal quotation

marks omitted).  It is the responsibility of the claims administrator to have a "meaningful

dialogue" with plan participants to let them know specifically what information is needed to

perfect their claim "in a manner calculated to be understood by the claimant."  *Saffon v. Wells*

*Fargo & Co. Long Term Disability Plan*, 522 F3d 863, 870 (9th Cir 2008), citing *Booton*, 110

F3d at 1463.

### A.  Denial Correspondence

Between June and November 2007, PacificSource denied payment of J.M.'s ABA

therapy  several times.

### 1.  Initial Denial

On June 10, 2007, PacificSource denied payment for services submitted by Hoyt,

explaining only that the "[p]rovider is not eligible on this plan.  See Covered Expenses section in

your Member Benefits Handbook."  SR 16.  In response, McHenry submitted an Internal

Grievance for the denial specifically asking "what would make a therapist eligible to provide

[ABA therapy] on our plan [?]" and whether PacificSource "offer[ed] a plan that include[d] ABA

therapy?"  SR 20.

### 2.  Grievance Committee Denial

PacificSource submitted McHenry's grievance to its Medical Grievance Review

Committee ("Grievance Committee").  SR 50-53.  By letter dated August 2, 2007, the Grievance

Committee upheld PacificSource's denial of McHenry's claim for three reasons: (1) the Plan

"specifically exclude[d] coverage for experimental or investigational procedures, services and

treatments;" (2) "the plan exclude[d] academic or social skills training;" and (3) BCBAs, "while

professionally educated, are not medically trained clinicians and are not eligible providers for

PacificSource."  SR 54.  It then explained:

> This determination is based on the above exclusions and a lack of
> sufficient evidence-based peer-reviewed literature and other supporting
> data to establish this as a standard of care of coverage.  The committee
> determined that Applied Behavior Analysis meets the plan definition of an

experimental or investigational procedure.  Pertinent plan language is enclosed for your review.

*Id.*

Enclosed with this denial letter was information related to the experimental/ investigational treatment exclusion and McHenry's appeal rights.  SR. 57.

### 3. <u>Policy Committee Denial</u>

McHenry appealed this decision on August 6, 2007, to PacificSource's Policy and Procedures Review Committee, disagreeing with the conclusion that ABA therapy was experimental or investigational in nature and providing evidence that it was accepted as a scientifically based treatment for children with autism.  SR 70-77.  By letter dated August 28, 2007, the Policy Committee explained that "[a]fter reviewing all of the available information in this case, [it] determined that the services provided by ABA therapy are educationally based social/interactive skill training services" which were "specifically exclude[d]" by the Plan. SR 93.  If McHenry believed any covered services were provided "in adjunct to ABA therapy," she could submit those services for a payment decision, but "as indicated in previous correspondence, *eligible services would need to be provided by an eligible medical or mental health provider . . . .*"  *Id* (emphasis added).  Included with the letter was information regarding appeal rights, but no further information about the cited exclusion or provider eligibility requirements.  *Id.*

### 4. <u>Final Denial</u>

On September 24, 2007, McHenry submitted her written appeal, disputing the conclusion that ABA therapy was primarily educational or social skills training, submitting research and letters in support of her claim that ABA therapy resulted in improvement in numerous

therapeutic goals that are essential activities of everyday life.  SR 108-112.  After McHenry

appeared and presented testimony at a hearing before the Membership Rights Panel ("MRP") on

November 7, 2007 (SR 224-347), PacificSource sent its final denial letter on November 21,

2007, informing McHenry of the MRP's conclusion that ABA therapy was "behavioral-

educational social skill training" specifically excluded by the Plan.  SR 351.  This final denial

letter did not include provider eligibility as grounds for the denial.

**B.  <u>Analysis</u>**

All of the denial letters referenced the relevant plan provisions upon which the denials

were based and provided information regarding the plan's review procedures.  While the denials

gave varying reasons for the adverse benefit determination, they set forth specific reasons for the

determination.  However, none of the denials included a description of any additional material or

information necessary that might be required for McHenry to perfect her claim as required by

subsection (iii) of 29 CFR § 2560.503-1(g)(1).

The only mention of any mechanism for submitting additional information was included

in the Policy Committee's August 28, 2007 denial letter, which instructed McHenry that she

could submit payment for covered services being provided "in adjunct to ABA therapy," but that

those services would "need to be provided by an eligible medical or mental health provider."

SR 93.  Such a general statement does not satisfy PacificSource's duty to provide McHenry with

"a description of any additional material or information necessary for [her] to perfect the claim

and an explanation of why such information is necessary."  29 CFR § 2560.503-1(g)(1)(iii); *see*

*Tinker v. Verstata, Inc.*, 566 F Supp2d 1158, 1164 (ED Cal 2008) (finding that a plan

administrator committed "clear and flagrant failure" by merely stating in the termination letter

that if claimant had "additional medical information" or wished for reconsideration of the decision, she should submit a formal request within 60 days).

Moreover, McHenry specifically asked what would make a provider eligible, but PacificSource failed to respond with that information. Recently, another court found that it is the responsibility of the claims administrator to inform the claimant what type of information it needed, especially if the claimant requests guidance. *Lavino v. Metro. Life Ins. Co.*, 2010 WL 234817 *9-10 (CD Cal January 13, 2010) (finding that administrator cannot deny a claim based upon the claimant's "failure to produce objective evidence," when the claim administrator never responded to claimant's repeated requests for guidance on what type of "objective evidence" was sought by the administrator), citing *Saffon*, 552 F3d at 870-73.

Not only did the denials fail to provide any description of what was necessary to perfect the claim, they also failed to give McHenry the information she needed to adequately prepare for appeal. While PacificSource complied with the requirement to give specific reasons for the adverse determination, it did not give consistent reasons which misled McHenry regarding the grounds for denial. Had PacificSource satisfied its duty to inform McHenry of the information necessary to perfect her claim, the inconsistent reasons would have been inconsequential. Instead, this failure lead McHenry to believe that the basis for denial was not Hoyt being an ineligible provider as stated in the June 10, 2007 initial denial, but that ABA therapy was not a covered benefit due to various plan exclusions. Of course, the two bases are related since no provider would be eligible to provide ABA therapy unless it was a covered benefit. In other words, as long as the plan excluded ABA therapy, whether Hoyt was an eligible provider was

irrelevant.  Not until this court ruled that ABA therapy is a covered benefit has the issue of an

eligible provider become paramount.

      At all times, McHenry tirelessly pursued the avenues which PacificSource communicated

to her as the reasons for denying her claims.  While the August 2, 2007 denial by the Grievance

Committee cited three reasons for denying the claim, it only included the specific plan provision

for the experimental/investigational procedure exclusion.  Accordingly, McHenry focused her

appeal on this exclusion.  The Policy Committee denial dated August 28, 2007, cited the

educationally based social/interactive skill training services exclusion as the primary basis for

the denial.  So McHenry changed her strategy, appealed, and submitted documentation and

evidence related to this exclusion.  At each level of appeal, McHenry relied upon the information

provided by PacificSource as the grounds for denial in order to challenge the adverse benefit

determination.

      In response, PacificSource asserts that the regulatory provisions require only an

adequately investigated and reasoned review which it provided.  Specifically, PacificSource

asserts that it "thoroughly investigated" Hoyt's eligibility by performing a licensure check and

placing a telephone call to Hoyt asking for additional information about her license and

credentials, as related in a September 24, 2007 letter sent to Oregon Insurance Division.  SR 106;

Defendants' Response (docket # 69), p. 8.  While this letter is not addressed to McHenry, excerpts

appear in the materials submitted with her appeal to the MRP at the November 7, 2007 hearing.

*See* SR 226-27.  This leads to the logical conclusion that she received it before then.

      Whether McHenry actually received the letter is not dispositive because the letter relates

only the results of PacificSource's investigation that Hoyt did not have the required licensure to

satisfy its credentialing requirements.  It does not include any information describing those credentialing requirements or how to otherwise perfect an ineligible provider claim.  The two paragraphs setting forth PacificSource's licensure check and telephone call made to Hoyt is evidence that PacificSource did investigate Hoyt's eligibility and communicated the result of that investigation to McHenry.  However, given the 2007 Plan's complex provider eligibility requirements, discussed in detail in this court's January 5, 2010 Opinion and Order, the letter does not establish that PacificSource communicated to McHenry "in a manner calculated to be understood by [her]" the information needed to perfect her claim.  *See Saffon*, 522 F3d at 870.

PacificSource also relies upon emails exchanged in late October 2007 regarding McHenry's inquires about obtaining a list of participating ABA therapy providers.  SR 215-17.  PacificSource appears to assert that because it ultimately provided McHenry with a list of participating psychologists, it satisfied its responsibility to engage in a meaningful dialogue with her.  SR 217.  Notably, McHenry requested a list of participating providers based upon treatment patterns.  In producing the list of participating psychologists, PacificSource stated that it did not know whether any of the participating psychologists provided ABA therapy.  SR 215-17.  In fact, none of them did.  *See* SR 253-55.  In any event, PacificSource's communications with McHenry never answered her question regarding what makes a provider eligible under the plan or even included any general information relating to the plan's provider eligibility requirements.

In support of its contention that its communication with McHenry was adequate, PacificSource relies on a decision by this court holding that the claims administrator "was not required to provide an exhaustive list of every possible piece of  . . . evidence that could conceivably strengthen [claimant's]  application; rather, the regulations [require the claims

administrator] to advise [the claimant] of what information it needed to intelligently evaluate [the] claim." *Harris v. Standard Ins. Co.*, 2008 WL 917119 *10 (D Or March 26, 2008). This court found adequate a general statement relating to claimant that additional medical information could be submitted and would be helpful if it would support claimant's assertion that the condition was more severe than previously understood. *Id*. In contrast, PacificSource made *no* statement relating what additional information might be helpful to McHenry's claim or why.

The record is clear that despite McHenry's repeated requests for guidance, PacificSource never provided a description of any additional material or information necessary to perfect the provider eligibility claim. This complete failure to communicate regarding eligibility requirements is not the type of "meaningful dialogue" that the Ninth Circuit requires between claim administrators and beneficiaries. To allow PacificSource to financially benefit from that failure would be a manifest injustice. Had McHenry known at the time of her appeals in 2007 that PacificSource's eligible provider requirements required Hoyt to be authorized for reimbursement by being enrolled with ODHS, there is no doubt that she would have pursued enrollment of Hoyt, as she has done in the short time since becoming aware of this requirement.

This court previously found that Hoyt is not an eligible provider under the 2007 Plan. Simply because Hoyt now has become an eligible provider does not make that finding erroneous unless Hoyt is retroactively granted that status to some earlier date. However, it is not at all clear, and there is no way to know, if Hoyt actually could have been enrolled as a provider at any earlier date. Thus, this court has no factual basis to apply Hoyt's eligibility as a provider retroactively to 2007 as requested by McHenry. In addition, McHenry did not allege a separate claim for breach of fiduciary duty, but alleged only that she is entitled to payment of benefits for ABA therapy. In

her motion for summary judgment, she argued that defendants committed several ERISA

violations, including committing notice violations in its denials, and that PacificSource violated

its fiduciary duty by failing to conduct an external review.  Based on those violations, she claimed

that she was prejudiced during the appeal process, but did not request any particular relief as a

result.

At this point, this court cannot determine what consequences legally flow from

PacificSource's failure to inform McHenry of the information needed to perfect her provider

eligibility claim and what equitable relief, if any, would be appropriate to remedy that failure.

Therefore, this court requires further briefing from the parties before amending the judgment.

## ORDER

Based on the above, McHenry's Motion for Reconsideration (docket #64) is construed as

a motion to alter or amend judgment under FRCP 59(e).  To address what relief, if any, should be

awarded to McHenry as a result of the breach of fiduciary duty by PacificSource by failing to

inform McHenry of the information needed to perfect her provider eligibility claim, the parties

shall submit supplemental briefing according to the following schedule:

May 3, 2010:   McHenry's Supplemental brief is due;

May 17, 2010:  Defendants' Response is due;

June 1, 2010:   McHenry's Reply is due.

DATED this 16th day of April, 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge