IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


LISA A. MCHENRY,

                    Plaintiff,

                                                        CV-08-562-ST

            v.

                                                        OPINION AND ORDER

PACIFICSOURCE HEALTH PLANS and THE
METRO AREA COLLECTION SERVICE, INC.
GROUP HEALTH/DENTAL PLAN,

_____Defendants._____

STEWART, Magistrate Judge:

## **INTRODUCTION**

        Resolving the parties' prior motions for summary judgment (construed as motions for

judgment on the records pursuant to FRCP 52), this court concluded that Applied Behavioral

Analysis ("ABA") therapy was a covered benefit under the 2007 Plan, but that McHenry had

1 - OPINION AND ORDER

failed to establish that Emily Hoyt ("Hoyt"), a Board Certified Behavior Analyst ("BCBA"), who provided ABA therapy to McHenry's son, J.M., was an eligible provider (docket #59). Therefore, the court entered a judgment in favor of defendants (docket #60). As the prevailing parties, defendant filed a Bill of Costs (docket #61).

McHenry then filed a Motion for Reconsideration (construed as Motion to Alter or Amend Judgment) (docket #64) and presented evidence that Hoyt had become authorized to receive reimbursement under Oregon law, making her an eligible provider. In its April 16, 2010 Opinion and Order (docket #74), the court found that PacificSource violated the notice requirements of 29 CFR § 2560.503-1(g)(1)(iii) during the claims review process by failing to inform McHenry of the information needed to perfect her claim and concluded that it would be a manifest injustice to allow PacificSource to financially benefit from that failure. The court ordered the parties to address in supplemental briefing what equitable relief, if any, should be awarded to McHenry as a result of the breach of fiduciary duty by PacificSource.

Because McHenry did not allege a claim for breach of fiduciary duty in her initial Complaint, she has filed a Motion for Leave to File First Amended Complaint seeking declaratory and injunctive relief under 29 USC § 1132 (a)(3) (docket #76). Her proposed First Amended Complaint seeks a declaration that Hoyt is an eligible provider effective January 10, 2007, when she began to provide ABA therapy to J.M. Accordingly, McHenry also seeks an order requiring defendants to cover J.M.'s ABA therapy pursuant to the 2007 Plan for the period January 10, 2007, through March 31, 2010, in the amount of $50,939.00, and into the future for his continuing necessary ABA therapy. Defendants oppose the filing of the proposed First Amended Complaint as untimely and prejudicial and also have filed a Motion for Amendment of

Findings and Judgment under FRCP 52(b) (docket #94), contending that the court erred by concluding that PacificSource breached its fiduciary duty.

For the reasons set forth below, the court adheres to its prior ruling that PacificSource breached its fiduciary duty, but finds that McHenry cannot recover the various types of relief she requests as a remedy. Instead, based on reconsideration, McHenry is awarded benefits under the 2007 Plan for J.M.'s ABA therapy provided by Hoyt after she became an eligible provider on February 5, 2010. Accordingly, McHenry's Motion for Reconsideration is granted in part, but McHenry's Motion to File First Amended Complaint and defendants' Motion for Amendment are both denied.

## I.      Defendants' Motion for Amendment of Findings and Judgment

Granting defendants' Motion for Amendment of Findings and Judgment would eliminate any claim for breach of fiduciary duty by PacificSource and, thus, would render McHenry's proposed amended complaint moot. Therefore, it is addressed first.

### A.      Legal Standard

Pursuant to FRCP 52(b), a party may timely request the court to amend its findings and judgment to correct manifest errors of fact or law.[1] A Rule 52(b) post-judgment motion "permits counsel to ask the court to correct, on the non-jury record before it, any errors of law, mistakes of fact or oversights that require correction." *U.S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F2d 172, 180 (3rd Cir 1981), *cert. denied*, 456 US 961 (1982). Such motions "are primarily designed to correct findings of fact which are central to the decision and are not intended to serve as a

---

[1] The rule requires that the motion be filed "no later than 28 days after the entry of judgment." FRCP 52(b). The court entered its order on April 16, 2010. PacificSouce filed its motion to amend on May 24, 2010, which is 38 days later. Notwithstanding its untimeliness, the court will consider the motion.

vehicle for a rehearing." *United States v. Oregon*, 666 F Supp 1461, 1466 (D Or 1987).  They

may be "appropriate where, for example, the Court has patently misunderstood a party, or has

made a decision outside the adversarial issues presented to the Court by the parties, or has made

an error not of reasoning but of apprehension." *333 West Thomas Med. Bldg. Enters. v.*

*Soetantyo*, 976 F Supp 1298, 1302 (D Ariz 1995), *aff'd*, 111 F3d 138 (9th Cir 1997).

In her Motion for Reconsideration, McHenry presented new evidence, outside the

administrative record, that Hoyt had become eligible for reimbursement by enrolling as a

"Behavior Consultant" with the Children's Intensive In-Home Services Behavior Program

("CIIS Program") in the Senior and People with Disabilities Division ("Disabilities Division") of

the Oregon Department of Human Services ("ODHS").  Defendants did not respond with any

argument based on Oregon law governing provider eligibility at that time, but now seeks to

remedy that failure through this motion.  Although defendants had a full and fair opportunity to

present this argument in response to McHenry's Motion for Reconsideration, this court will

consider their belated argument contesting Hoyt's eligibility in an abundance of caution to avoid

legal error.

## B.    Hoyt as Eligible Provider

First, defendants contend that, contrary to this court's prior findings, Hoyt did not, could

not, and still does not satisfy the eligible provider requirements.

The requirements for insurance reimbursement eligibility under Oregon law are found in

ORS 743A.010 *et seq.*  ORS 743A.168 prescribes the requirements for provider eligibility

criteria under group health policies and defines "provider" as follows:

> (e) "Provider" means a person that has met the credentialing requirement
> of a group health insurer, is otherwise eligible to receive reimbursement

for coverage under the policy and is:
(A) A health care facility;
(B) A residential program or facility;
(C) A day or partial hospitalization program;
(D) An outpatient service; **or**
**(E) An individual behavioral health or medical professional authorized for reimbursement under Oregon law.**

ORS 743A.168(1)(e) (emphasis added.)

A provider "is eligible for reimbursement" under Oregon law if:

(a) **The provider is approved by the Department of Human Services;**
(b) The provider is accredited for the particular level of care for which reimbursement is being requested by the Joint Commission on Accreditation of Hospitals or the Commission on Accreditation of Rehabilitation Facilities;
(c) The patient is staying overnight at the facility and is involved in a structured program at least eight hours per day, five days per week; **or**
(d) The provider is providing a covered benefit under the policy.

ORS 743A.168(5) (emphasis added.)

The 2007 Plan adopts almost verbatim the statutory requirements for insurance reimbursement eligibility under ORS 743A.010 *et seq*. The 2007 Plan further defines a "provider" for mental health services as "a person who meets the credentialing requirements of PacificSource, is otherwise eligible to receive reimbursement under the policy, and is … [a]n individual behavioral health or medical professional authorized for reimbursement under Oregon law." Those policy provisions are essentially identical to the statutory requirements for insurance reimbursement eligibility under ORS 743A.168(1)(e) and (5). This court previously determined that due to conflicting provisions regarding the credentialing requirement, Hoyt need not be credentialed with PacificSource to be considered an eligible provider. *See* Opinion and Order (docket #59), pp. 31-33. Thus, the relevant inquiry is whether she is authorized for reimbursement under Oregon law.

5 - OPINION AND ORDER

Defendants argue that Hoyt lacks the credentials and certification needed to make her and her organization eligible for reimbursement as a provider "approved by" ODHS under ORS 743A.168(5)(a).  In support, defendants cite the procedures and standards in OAR Chapter 309 that require organizations to obtain a "Certificate of Approval" from ODHS to be eligible for insurance reimbursement, with individual providers becoming eligible for insurance reimbursement through the approval certificates of their organizations.

The regulations governing the procedures for obtaining an ODHS "Certificate of Approval" for insurance reimbursement purposes are found at OAR 309-012-0130 to 0220. OAR 309-039-0500 to 0580 prescribe the eligibility standards for mental health providers.  To obtain a "Certificate of Approval" for insurance reimbursement of mental health services, OAR 309-039-0540(3)(a) requires that a provider may use only "qualified supervisors and qualified mental health professionals [to] provide individual, group and family therapy."  A close review of the regulations reveals that neither Hoyt nor her organization, Building Bridges, would satisfy the criteria necessary to obtain a "Certificate of Approval" because neither satisfy the regulations' standards for qualified supervisors and qualified mental health professionals authorized to provide therapy services.  *See* OAR 309-039-0510(12), (13).

However, OAR Chapter 309 governs the Addictions and Mental Health Division of ODHS and controls coverage of organizations rather than individuals like Hoyt.  Potter Aff. (docket # 108), ¶¶ 3-4.  Defendants mistakenly assume that Hoyt must enroll under the Addiction and Mental Health Division to be eligible for reimbursement under the Plan.  That assumption is not supported by the Plan which requires only that the mental health provider be approved by ODHS, without specifying by which division.  While ODHS is subdivided into

6 - OPINION AND ORDER

separate divisions, including the Addiction and Mental Health Division and the Disabilities

Division, the Plan makes no such distinction.  It identifies as covered mental health services all

services provided by any eligible provider to treat all conditions set forth in the DSM-IV, except

certain excluded conditions.  The issue is not how the services are classified by ODHS, but

whether they are covered services under the Plan and whether Hoyt has enrolled as required in

accordance with the Plan's requirements.  The Plan does not require Hoyt's organization to have

a Certificate of Approval from ODHS in order to become a covered provider.  It only requires

that an individual be authorized for reimbursement under Oregon law.[2]

Hoyt is enrolled as a Behavior Consultant pursuant to Division 300 of OAR Chapter 411

(OAR 411-300-0100 through 0220), which applies to the CIIS Program under the Disabilities

Division.  Baker Aff. (docket # 109), ¶¶ 3, 5.  Division 300 of Chapter 411 distinguishes between

a Provider and a Behavior Consultant by prescribing specific qualifications and duties for each.

OAR 411-300-0150, 0170, & 0190.  OAR 411-300-0110(4) defines a Behavior Consultant as "a

contractor with specialized skills who develops a behavior support plan."

In approving Hoyt's application, the Disabilities Division determined that she met the

requirements for a Behavior Consultant as prescribed in OAR 411-300-0170(2).  The criteria

Hoyt met as a BCBA were substantially similar to these requirements.  To become a BCBA,

Hoyt was required to complete 225 hours of graduate level instruction in several content areas,

including ethical considerations, definition and characteristics and principles, behavioral

---

[2] The court referenced OAR Chapter 309 in its earlier Opinion and Order granting summary judgment (docket #59, p. 35, n. 12) when discussing Hoyt's original argument that she could be enrolled with ODHS as a provider through the County Mental Health Program ("CMHP") which requires that organizations have a Certificate of Approval.  That reference does not change the fact that the Plan does not require that a provider be enrolled under a specific division or obtain a Certificate of Approval.

assessment, experimental evaluation of interventions, measurement of behavior, and behavior

change procedures.  SR 1161.  She also had to accumulate field experience, including

conducting assessment activities related to the need for behavioral interventions; designing,

implementing and monitoring behavior analysis programs; and overseeing the implementation of

behavior analysis programs by others.  SR 1162.  Thus, Hoyt's education, training and duties as

a BCBA closely mirror the training, education and skills required of a Behavior Consultant

under Oregon law.  *Compare* OAR 411-300-0150(4) *with* SR 1161-62.

Hoyt's enrollment as a Behavior Consultant within the CIIS Program satisfies the

purpose behind Oregon's statutory reimbursement requirements for non-licensed providers since

she is subject to a state-sanctioned governing body which sets standards and exercises control

over its members.  As an ODHS-approved Behavior Consultant, Hoyt is subject to oversight by

ODHS through a Services Coordinator.  *See* OAR 411-300-0110(25) (the Services Coordinator

". . . provides assessment, case planning, service implementation, and evaluation of the

effectiveness of the services"); OAR 411-300-0130(2)(d) (identifying the "number of hours of

in-home daily care or behavior consultation authorized for the child"), and OAR

411-300-0130(3)(c) (sets the date for review by the services coordinator of the "Plan of Care").

In addition, as an ODHS-approved Behavior Consultant, Hoyt must submit the following to the

Disabilities Division:

> (a) An evaluation of the child, the parent's concerns, the environment of
> the child, current communication strategies used by the child and used by
> others with the child, and any other disability of the child that would
> impact the appropriateness of strategies to be used with the child; and
> (b) Any behavior plan or instructions left with the parent or provider that
> describes the suggested strategies to be used with the child.

OAR 411-300-0190(6).

8 - OPINION AND ORDER

ODHS's decision approving Hoyt as a Behavior Consultant demonstrates that Hoyt meets all of the requirements set forth in OAR 411-300-0100 through 0220.  As an enrolled Behavior Consultant with ODHS, by definition, Hoyt is "an individual behavioral health . . . professional authorized for reimbursement under Oregon law."  ORS 743A.168 (1)(e)(E).  She is authorized to receive payment for all behavioral consulting services that she performs for any ODHS patient or client, or will be reimbursed by ODHS for such services she provides, in accordance with OAR 411-300-0100 through 0220.  Baker Aff., ¶ 5.

The statutory framework for Division 300 of OAR Chapter 411 regulates the CIIS Program, which is designed to provide support for families of children with developmental disabilities and intense behaviors.  Accordingly, the eligibility of children to enroll in the CIIS Program, qualification of providers, and the type of services available are closely regulated by Division 300.  As a Behavior Consultant, Hoyt is authorized to provide specific services within the CIIS Program and presumably also would be qualified to provide similar services to children outside of the CIIS Program.

The Plan does not provide any details as to how one might become authorized for reimbursement under Oregon law, what division one must enroll in, or whether one must be authorized to provide therapy or only to provide consultant services.  Whether Hoyt may be reimbursed for services provided outside of the CIIS Program is not relevant to the present inquiry because the Plan does not require anything more than authorization for reimbursement under Oregon law.  To the extent the Plan is ambiguous in this regard, the court must adopt the interpretation most favorable to McHenry.  *Kunin v. Benefit Trust Life Ins. Co.*, 910 F2d 534, 539-40 (9th Cir) (as amended), *cert. denied*, 498 US 1013 (1990), *reh'g denied*, 498 US 1074

(1991).  Thus, Hoyt is provider under the terms of the Plan because she is approved by ODHS and, therefore, is "authorized for reimbursement under Oregon law," as the Plan requires.

### C.      Compliance with Notice Requirements

Second, defendants argue that, contrary to this court's findings, PacificSource substantially complied with the notice requirements prescribed by 29 CFR § 2560.503-1(g)(1)(iii) by, among other things:  (1) explaining through numerous correspondence the reasons for the denial (provider not eligible); (2) investigating and obtaining the necessary information on McHenry's selected provider, Hoyt and her organization (Building Bridges), to accurately determine that the provider was not eligible under the Plan; and (3) identifying and consistently stating to McHenry that a provider must satisfy the statutory requirements listed under ORS 743A.168 and adopted by the Plan.  PacificSource argues that it had no duty to describe any additional information or materials necessary for McHenry to perfect her claim.

PacificSource did provide McHenry with specific reasons for its adverse benefit determination.  However, none of the denials complied with 29 CFR § 2560.503-1(g)(1)(iii) which specifically requires "a description of any additional materials or information necessary for [McHenry] to perfect the claim and an explanation of why such material or information is necessary."  PacificSource contends that the court wrongly presumed that additional information or materials were necessary, based on its erroneous finding that Hoyt's enrollment as a Behavior Consultant with ODHS's CIIS Program was sufficient to satisfy Oregon's statutory insurance reimbursement requirements.  If PacificSouce is correct, then it needed no additional information or materials to evaluate McHenry's claim, and its investigation correctly concluded that Hoyt did not and could not satisfy eligibility requirements.

However, as discussed above, Hoyt's enrollment with ODHS's CIIS program is sufficient to satisfy Oregon law and the Plan's requirements.  At no time during the denial process did PacificSource provide any information regarding how a provider could become eligible under the Plan, despite McHenry's repeated requests for this information.  Accordingly, this court stands by its earlier conclusion that PacificSource breached its notice obligation by failing to communicate with McHenry regarding provider eligibility requirements.

PacificSource also takes issue with this court's finding that it focused on different grounds for denial throughout the denial process.  It maintains that its denials were consistently based on both the exclusion of ABA therapy as a covered benefit and the ineligibility of McHenry's provider.  It also highlights that some correspondence refers to provider eligibility, that Hoyt did not and could not satisfy Oregon's statutory eligibility requirements, that its explanations for denying the claim were based on its erroneous interpretation of the 2007 Plan at the time, and that McHenry was represented by counsel who never sought guidance concerning the statutory eligibility requirements.

However, the fact remains that PacificSource shifted focus several times in its denial letters, and this caused McHenry to change the focus of each of her appeals.  McHenry was aware that provider eligibility was a basis of the denial and repeatedly sought additional guidance regarding provider eligibility, but she was never provided clear information regarding what makes a provider eligible under the Plan.  This is likely due to PacificSource's reluctance to focus upon provider eligibility as the primary basis for denying the claim and preference to instead focus on the various exclusions as a "more primary and more solid argument."  SR 105.

PacificSource's letter addressed to Yani Horst, a consumer protection advocate, further

11 - OPINION AND ORDER

underscores this point.  SR 212.  In that letter, after discussing provider credentialing,

PacificSource states that it "would only reimburse for services covered under the health plan

regardless of an individual's credentials."  *Id.*  Because PacificSource did not consider ABA

therapy a covered benefit, the provider's eligibility was an afterthought, as reflected by the

denial notices.  The court previously considered and rejected the argument that PacificSource

engaged in a meaningful dialogue with McHenry regarding the basis for the denial of her claim

and, after further review, adheres to the same conclusion.

Defendants also maintain that McHenry would not have acted sooner to make Hoyt

eligible for reimbursement even if she had been informed of Oregon's statutory requirements for

insurance reimbursement eligibility.  McHenry did not vary in her argument why Hoyt was

eligible for reimbursement, specifically because a provider is eligible for reimbursement under

Oregon law and the terms of the 2007 Plan if the provider was providing a covered benefit.

They contend that she changed her position only after the court found to the contrary and held

that a provider is eligible for reimbursement only by satisfying the statutory requirements listed

under ORS 743A.168 and the terms of the Plan.

The record on the whole does not support defendants' argument.  At every stage of the

denial process McHenry addressed and challenged the reasons provided for her claim denial.

For instance, when it became clear that PacificSource was denying the claim upon its belief that

ABA was not a covered benefit, McHenry focused her energy and efforts on challenging

PacificSource's cited Plan exclusions.  As the record shows, the complete failure to consistently

and clearly communicate with McHenry resulted in McHenry's failure to diligently pursue

enrollment earlier in the process. Had PacificSource fulfilled its duty, then the court would not

12 - OPINION AND ORDER

have had to provide her with the information she needed at such a late date.

**D.** **Conclusion**

Defendants' Motion for Amendment of Findings and Judgment (docket #94) is denied because:  (1) Hoyt's enrollment as a Behavior Consultant with ODHS's CIIS program satisfies the Plan's provider eligibility requirements; and (2) PacificSource did not satisfy the notice requirements prescribed by 29 CFR § 2560.503-1(g)(1)(iii) by failing to communicate regarding the Plan's provider eligibility requirements and providing the information necessary to perfect the claim.

**II.** **McHenry's Motion to File Amended Complaint**

**A.** **Legal Standard**

"When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move — at any time, even after judgment — to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."  FRCP 15(b)(2).  The purpose of the rule is "to allow an amendment of the pleadings to bring them in line with the actual issues upon which the case was tried." *Campbell v. Board of Trustees*, 817 F2d 499, 506 (9th Cir 1987) (citation omitted).

The rule and relevant case law reflect the liberal policy favoring amendments of pleadings at any time.  *Consolidated Data Terminals v. Applied Digital Data Sys., Inc.*, 708 F2d 385, 396 (9th Cir 1983).  Deciding whether to grant leave to amend, the Supreme Court has offered the following guidance:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

> allowance of the amendment, futility of amendment, etc. — the
> leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 US 178, 182 (1962).

Of these factors, consideration of prejudice to the opposing party carries the greatest

weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F3d 1048, 1052 (9th Cir 2003).

**B.**   **Prejudice**

Defendants first oppose McHenry's motion as prejudicial because the issue of breach of

fiduciary duty was not tried by the parties' implied consent.  According to defendants, whether

PacificSource violated the notice requirements of 29 CFR § 2560.503-1(g)(1)(iii) during the

claims review process was not tried by implied consent because all the evidence and arguments

presented concerning provider eligibility were related to McHenry's claim for denial of benefits

under 29 USC § 1132(a)(1)(B).

This court agrees that defendants had no notice that McHenry was alleging a breach of

fiduciary duty in this context.  While the parties addressed Hoyt's status as an eligible provider

extensively in their cross motions for summary judgment, and even submitted supplemental

briefing on the issue, they did not address the issue in the context of whether PacificSource

committed notice violations, thereby breaching its fiduciary duty.  Further, McHenry's position

has always been that a provider who provides a covered benefit is eligible for reimbursement.

Consequently, she brought a claim for benefits pursuant to 29 USC § 1132(a)(1)(B), asserting

that ABA therapy is a covered benefit and that Hoyt is an eligible provider because she provides

that ABA therapy.

To the extent that McHenry alleged a breach of fiduciary duty, it was in the context of

whether a conflict of interest existed due to PacificSource's failure to notify the Oregon

14 - OPINION AND ORDER

Insurance Division ("OID") of IMEDECS' conflict of interest. *See* docket # 44, p. 35. Not until

the court's summary judgment opinion was McHenry provided with the information she needed,

and which PacificSource failed to provide, regarding the Plan's provider eligibility requirements.

With that knowledge, McHenry promptly enrolled Hoyt with ODHS and filed her Motion for

Reconsideration on the ground that, but for PacificSource's breach of its fiduciary duty during

the claims review process, Hoyt would have been eligible for reimbursement under Oregon law

much earlier. This was the first time that the notice requirements of 29 CFR § 2560.503-1(g)(1)

became an issue. Accordingly, defendants would be prejudiced by adding a claim at this late

date for breach of PacificSource's fiduciary notice obligation under 29 CFR § 2560.503-1(g)(1)

which was not tried with all parties' informed consent. For this reason alone, McHenry cannot

amend her complaint at this late date.

### C.    Futility

Defendants also contend that amendment would be futile because McHenry has no basis

for obtaining equitable relief under 29 USC § 1132(a)(3). As support, it argues that: (1) Hoyt

did not, could not, and still does not satisfy the requirements to become an eligible provider

under Oregon law; (2) McHenry has other avenues of relief that she has already pursued (based

on Hoyt's prior qualifications) and may still pursue (based on Hoyt's purported new

qualifications); (3) she seeks legal relief in the form of monetary damages; and (4) the proper

remedy would be to remand the claim to PacificSource to determine Hoyt's eligibility as a

provider based on new evidence. Although Hoyt is an eligible provider under Oregon law, this

court agrees that McHenry cannot recover the relief alleged in the proposed amended complaint.

### 1.    Hoyt's Status as an Eligible Provider

In support of her motion, McHenry submits three supporting affidavits to show that Hoyt possessed the requisite qualifications to be enrolled as an ODHS provider in January 2007 and would have been approved as a provider by ODHS if she had applied for provider status at that time.

First is the affidavit of Nita Cannon, Office Specialist with the CIIS program of ODHS, who reviewed Hoyt's qualifications in light of ODHS's requirements for providers in January 2007 and determined that nothing barred Hoyt from meeting ODHS's training, education and criminal history check requirements as of January 1, 2007.  Cannon Aff. (docket # 85), ¶¶ 1, 2. If Hoyt had completed the Oregon Intervention System ("OIS") certification and obtained professional liability insurance, then "she would have been approved as a provider at that time." *Id*, ¶ 2.

Second is the affidavit of Cindy Hodges, a certified OIS trainer for the Northwest Regional Educational Services District Special Student Services.  Hodges explains that the eligibility requirements to receive OIS training have not changed since January 2007.  Hodges Aff. (docket # 84), ¶¶ 1, 6, 8.  Although Hoyt completed her OIS training in early 2010, it was substantially the same OIS training that she would have received in January 2007 or any time thereafter.  *Id* at ¶¶ 7-8.

Third is Hoyt's affidavit.  She states that while she did not possess professional liability insurance in 2007, she could have and would have obtained that insurance had she been asked to do so in order to participate in OIS training or become an enrolled provider through ODHS. Hoyt Aff. (docket # 86), ¶¶ 1-4.

In response, defendants argue that this court has already decided that McHenry failed to

16 - OPINION AND ORDER

establish Hoyt was an eligible provider from January 10, 2007, through March 31, 2010.

Therefore, any benefits for services provided by Hoyt during that time period would

impermissibly require defendants to pay benefits for services not covered under the Plan.

To avoid this result, McHenry asks the court to retroactively deem Hoyt to be an eligible

provider.  If this court entered such an order, then PacificSource would not be violating the terms

of the Plan.

On the issue of Hoyt's status, the court has determined, as discussed above, that she

became an eligible provider under the terms of the Plan effective February 5, 2010, when she

became authorized for reimbursement under Oregon law.  That is sufficient to overcome

PacificSource's concern about paying benefits in violation of the terms of the Plan as of that

date.  As for the time period before February 5, 2010, when McHenry has presented evidence

that Hoyt could have become an eligible provider, McHenry cannot recover benefits as sought in

her proposed amended complaint, as discussed below.

### 2.    Nature of Relief Requested

Individual equitable relief for breach of fiduciary duty is available under 29 USC

§ 1132(a)(3)'s "catchall" provision only "for injuries caused by violations that § 502 does not

elsewhere adequately remedy."  *Varity Corp. v. Howe*, 516 US 489, 512 (1996).  Moreover, the

remedies available under this subsection are limited to those remedies that were "traditionally

viewed as 'equitable,' such as injunction or restitution."  *Mertens v. Hewitt Assocs.*, 508 US 248,

255 (1993).  Thus, in order to have an actionable claim under § 1132(a)(3), a plaintiff must have

no other adequate avenue of relief under ERISA and must seek relief that has traditionally been

viewed as equitable.  McHenry's proposed amended complaint fails on both accounts.

When another ERISA provision, such as 29 USC § 1132(a)(1)(B), provides an avenue for relief, a claimant may not pursue a claim for equitable relief under § 1132(a)(3).  *Ford v. MCI Comm. Corp. Health and Welfare Plan*, 399 F3d 1076, 1083 (9th Cir  2005); *Forsyth v. Humana, Inc.*, 114 F3d 1467, 1475 (9th Cir), *cert denied*, 522 US 996 (1997), *cert granted*, 524 US 936 (1998), *aff'd*, 525 US 299 (1999).  Defendants contend that McHenry's requested payment of benefits after January 10, 2007, is really a benefits claim disguised in equitable language.  This court agrees.

McHenry's original claim sought to recover benefits due under the Plan, and she has presented no evidence that her ability to seek benefits under § 1132(a)(1)(B) has been foreclosed.[3] In fact, her proposed amended complaint seeks damages under § 1132(a)(1)(B) in addition to various forms of injunctive relief under § 1132(a)(3).  Thus, a claim by McHenry for equitable relief is inappropriate because the relief available under § 1132(a)(1)(B) is adequate to address her claim for payment of benefits for the ABA therapy provided by Hoyt.  *Varity*, 516 US at 512; *see also*, *Ford*, 399 F3d at 1082 (holding that because plaintiff had asserted claims under discrete ERISA provisions, including § 1132(a)(1)(B), the "catchall" provision of § 1132(a)(3) was not available); *Forsyth*, 114 F3d at 1475 (holding that employee beneficiaries could not bring claim under § 1132(a)(3) where they had a claim under § 1132(a)(3)).

Moreover, it is clear that McHenry seeks monetary damages, not equitable relief.  The term "equitable relief" in 29 USC § 1132(a)(3) "must refer to 'those categories of relief that were typically available in equity . . . .'" such as injunction, mandamus, and restitution.  *Great-West*

---

[3] McHenry does not directly address whether she can still bring a benefits claim for the ABA therapy provided over three years ago.  Defendants assert that McHenry can still pursue her claim.  Thus, the court presumes that there are no additional obstacles to pursuing such a claim, such as a time bar or other procedural hurdles.  *See* Def.'s Supp. Memo. (docket #93), p. 7.

*Life & Annuity Ins. Co. v. Knudson*, 534 US 204, 210 (2002), citing *Mertens*, 508 US at 256; *see also*, *FMC Med. Plan v. Owens*, 122 F3d 1258, 1261 (9th Cir 1997).  Relief under § 1132(a)(3) is not appropriate when a claim for monetary relief is disguised in equitable language.  *Paulsen v. CNF Inc.*, 559 F3d1061, 1076 (9th Cir 2009), *cert. denied*, 130 S Ct 1053 (2010); *Reynolds Metals Co. v. Ellis*, 202 F3d 1246, 1248 (9th Cir), *cert. granted*, 531 US 1009, *cert. dismissed*, 531 US 1061 (2000).  Although the proposed amended complaint seeks injunctive and declaratory relief, McHenry requests the court to prevent PacificSource from denying her claim, ultimately resulting in payment of benefits.  *See Knudson*, 534 US at 210 ("'[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'"), quoting *Bowen v. Mass.*, 487 US 879, 918-19 (1988) (Scalia, J., dissenting).

To the extent that McHenry seeks restitution, the Supreme Court has stated that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Knudson*, 534 US at 214.  Moreover, restitution is measured by a defendant's "unjust gain, rather than [by a plaintiff's] loss."  *Id* at 229 (Ginsburg, J., dissenting).  Here, it is clear that McHenry seeks to recover funds attributable to her loss through recovery of payment for J.M.'s ABA therapy.  McHenry seeks a declaratory order requiring the payment of benefits in the amount of more than $50,000.00.  No matter how she attempts to characterize it, the heart of this claim is one for payment of benefits due under the Plan.  "When the substance of the relief is monetary . . . such a remedy is not available under section 1132(a)(3)."  *Owens*, 122 F3d at 1262;

*see also*, *Knudson*, 534 US at 221 ("Because petitioners are seeking legal relief – the imposition of personal liability on respondents for a contractual obligation to pay money – § 1132(a)(3) does not authorize this action."). McHenry's attempt to characterize her claim for declaratory relief as a necessary step in awarding benefits is not supported by the case law. While the cases she cites may contain some favorable language, they do not change the rule that equitable relief under § 1132(a)(3) does not include compensatory damages and is not appropriate where another section provides an adequate remedy. Accordingly, amendment of the complaint to add a claim for breach of fiduciary duty seeking payment of benefits would be futile.

> **D.    Conclusion**

McHenry's Motion for Leave to File First Amended Complaint (docket #76) is denied. The amendment would be prejudicial to defendants because the issue of whether PacificSource breached its fiduciary notice obligations was not tried by the parties' informed consent. Moreover, the amendment would be futile because McHenry has no basis for obtaining equitable relief under 29 USC § 1132(a)(3) and seeks legal relief in the form of monetary damages.

## III.    Relief

Although this court has previously concluded, and still concludes, that PacificSource breached its fiduciary duty to McHenry, McHenry cannot recover any equitable relief as a result. However, this court also has concluded that ABA therapy is a covered benefit under the Plan and that Hoyt became an eligible provider effective February 5, 2010. The remaining issue is what relief should be awarded as a result. In her proposed amended complaint, McHenry requests that the court: (1) issue a declaration that Hoyt is an eligible provider authorized for reimbursement under the Plan, effective January 10, 2007, and (2) order defendants to process her claims for

ABA therapy provided by Hoyt.  Although McHenry may not amend her complaint to seek this

relief, her initial complaint is sufficient to include a claim for benefits as early as January 2007

when, based on the newly presented evidence, Hoyt could have become an eligible provider.

### A.    Retroactive Reimbursement

The court declines to retroactively declare Hoyt eligible for reimbursement under Oregon

law prior to February 5, 2010, because McHenry has cited no case, and the court is aware of none,

that permits such a remedy in circumstances such as these.  Moreover, even if Hoyt could have

enrolled as a Behavior Consultant under the CIIS Program as early as January 10, 2007, the fact

remains that she did not do so and, therefore, was not subject to any ODHS oversight at that time.

### B.    Remand

Rather than award benefits to McHenry, defendants argue that the proper remedy is to

remand the claim to PacificSource, as the claims administrator, to determine the eligibility of

McHenry's provider based on new evidence outside the administrative record that had not been

presented to or considered by PacificSource.

Where the plan administrator wrongfully terminated benefits, "retroactive reinstatement of

benefits is appropriate in ERISA cases where . . . but for [the insurer's] arbitrary and capricious

conduct, [the insured] would have continued to receive the benefits or where there [was] no

evidence in the record to support a termination or denial of benefits."  *Grosz-Salomon v. Paul*

*Revere Life Ins. Co.*, 237 F3d 1154, 1163 (9th Cir 2001) (internal citations omitted).  In contrast, a

"[r]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA

plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied the

wrong standard to a benefits determination."  *Saffle v. Sierra Pac. Power Co. Bargaining Unit*

*Long Term Disability Income Plan*, 85 F3d 455, 461 (9th Cir 1996). "This distinction in remedies makes perfect sense, as the improper termination . . . was the result of arbitrary and capricious procedures, and therefore [ ]benefits could not have been terminated by those procedures." *Pannebecker v. Liberty Life Ass. Co. of Boston*, 542 F3d 1213, 1221 (9th Cir 2008) (citation and internal quotation omitted). The Sixth Circuit has interpreted *Grosz-Salomon* to mean that "where a plan administrator properly construes the plan documents but arrives at the 'wrong conclusion' that is 'simply contrary to the facts,' a court should award benefits." *Shelby County Health Care Corp. v. Majestic Star Casino*, 581 F3d 355, 374-75 (6th Cir 2009), quoting *Grosz-Salomon*, 237 F3d at 1163.

    This case does not involve an improper termination of benefits due to arbitrary and capricious procedures or a situation where the administrator properly construed the plan documents but arrived at the wrong conclusion. Instead, PacificSource improperly construed the Plan documents and denied McHenry's claim because ABA therapy was not a covered benefit and Hoyt was not an eligible provider. While there is evidence in the record that but for PacificSource's failure to provide McHenry with the information necessary to perfect her provider eligibility claim, Hoyt could have and would have enrolled with ODHS earlier, this was not the result of any arbitrary or capricious procedure. Instead, PacificSource did not consider ABA therapy a covered benefit. Whether Hoyt was an eligible provider was a secondary issue; unless she was providing a covered benefit, then it would not pay the claim. *See* SR 105, 212. While the court later disagreed, PacificSource's position was not unreasonable at the time. *See Tinker v. Versata Inc. Group Disability Income Ins. Plan*, 566 F Supp 2d 1158, 1167 (ED Cal 2008) (finding an administrator's termination of a disability claim was unreasonable, thereby

entitling the claimant to a reinstatement of benefits).  Moreover, Hoyt was not enrolled with

ODHS at the time of the denial, such that PacificSource's denial was not contrary to the facts, but

rather, was consistent with the facts as they existed at that time.

Remand also is appropriate when new evidence relating to a benefits claim is introduced

at trial that was not previously considered by a plan administrator exercising discretion.

*Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F3d 120, 125 (4th Cir 1994).

However, when the plan administrator is not granted discretion and the court conducts a *de novo*

review of a plan administrator's decision, the court may consider evidence not taken into account

by the administrator.  *Id*.  Here the Plan did not confer a broad grant of discretionary authority to

PacificSource to determine claims, and review is *de novo* (docket #27).  The court previously

found that ABA therapy was a covered benefit under the Plan and that Hoyt is an eligible

provider under the terms of the Plan as of February 5, 2010.  Thus, based upon the fully

developed record currently before the court, it is clear that under the terms of the 2007 Plan,

McHenry is authorized for reimbursement for the ABA therapy provided by Hoyt since February

5, 2010.

Defendants also argue that remand is appropriate because some of the bills submitted by

McHenry require further evaluation.  For example, several of the bills are from providers other

than Hoyt.  *See, e.g.*, McHenry Aff. (docket #87), Ex. A, at pp. 21-23, 26, 29, 32, 35, 38, 41,

43-45, 53, 63, 65, 67-69, 71-72, 74, 76, 78.  The bills also contain some unusual entries, such as

those entitled "tuition," "gas expenses," and "Vegas," that may require further evaluation.  *Id* at

47, 51, 54, 55.  However, the court may accomplish this same result by having the parties submit

a stipulated statement of benefits payable under the Plan.  *See Lafferty v. Providence Health*

*Plans*, Civil No. 08-6318-TC, — F Supp2d —, 2010 WL 1499460, at * 16 (D Or April 12, 2010).


Given PacificSource's previous failure to fully comply with the notice requirements of 29 CFR § 2560.503-1(g)(1)(iii), it will not be afforded a "second bite at the apple" with a remand of McHenry's claim.  *Grosz-Salomon*, 237 F3d at 1163.  Moreover, remand would result in further delay on a claim for treatment that began over three years ago.  Consequently, McHenry is entitled to reimbursement for ABA therapy provided by Hoyt, effective February 5, 2010, and defendants are directed to process McHenry's claims for ABA therapy provided by Hoyt on and after that date.

**IV.**    **Bill of Costs**

Defendants submitted a Bill of Costs (docket #61) pursuant to this court's earlier judgment granting summary judgment in its favor.  FRCP 54(d)(1) provides, in part, that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"  However, "the discretion granted under Rule 54(d) allows a court to decline to tax costs."  *Adidas America, Inc. v. Payless Shoesource, Inc.*, Civil No. 01-1655-KI, 2009 WL 302246, at *2 (D Or Feb. 6, 2009), quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 US 437, 442 (1987).  After defendants filed their Bill of Costs, the court reconsidered its prior ruling. As a result, McHenry has achieved partial recovery on her claim for benefits that this court had previously denied in full.  Because McHenry is also a "prevailing party" in this action, this court declines to award the costs requested by defendants.

///

**ORDER**

Based on the above, defendants' Bill of Costs (docket #61), defendants' Motion for Amendment of Findings and Judgment (docket #94), and McHenry's Motion for Leave to File an Amended Complaint (docket #76) are DENIED, and McHenry's Motion for Reconsideration (docket #64) is GRANTED to the extent that McHenry is entitled to reimbursement under the 2007 Plan for ABA therapy provided by Hoyt to J.M. on and after February 5, 2010, and is otherwise DENIED.

In order for this court to enter an amended judgment in McHenry's favor with respect to awarding past due benefits, within 28 days the parties shall submit to the court a stipulated statement of past due benefits payable to McHenry from February 5, 2010, to the date this Opinion and Order is filed.

DATED this 28th of September, 2010.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

25 - OPINION AND ORDER