IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LISA A. MCHENRY,                                        CV-08-562-ST

            Plaintiff,                              OPINION

    v.

PACIFICSOURCE HEALTH PLANS and THE
METRO AREA COLLECTION SERVICE, INC.
GROUP HEALTH/DENTAL PLAN,

              Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Lisa A. McHenry ("McHenry"), brought this ERISA action to recover benefits

under the 2007 Metro Collection Service Inc. Group Health/Dental Plan (the "Plan") from

defendant, PacificSource Health Plans ("PacificSource"), for Applied Behavioral Analysis

therapy ("ABA" therapy") provided to her minor son, J.M.  Resolving the parties' prior motions

1 - OPINION

for summary judgment (construed as motions for judgment on the record pursuant to FRCP 52), this court ultimately concluded that ABA therapy was a covered benefit under the terms of the Plan, but that McHenry had failed to establish that Emily Hoyt ("Hoyt"), a Board Certified Behavior Analyst ("BCBA"), who provided ABA therapy to J.M., was an eligible provider (docket #59). Therefore, the court entered a judgment in favor of defendants (docket #60).

McHenry then filed a motion for reconsideration (construed as a motion to alter or amend judgment), presenting evidence that Hoyt had become an eligible provider under the terms of the Plan. In an Opinion and Order dated April 16, 2010 (docket #74), the court found that PacificSource had violated ERISA's notice requirements during the claims review process by failing to inform McHenry of the information needed to perfect her claim and concluded that it would be a manifest injustice to allow PacificSource to financially benefit from that failure. The court ordered the parties to address in supplemental briefing what equitable relief, if any, should be awarded to McHenry as a result of this breach.

McHenry filed a motion for leave to file an amended complaint to add a claim for breach of fiduciary duty and declaratory and injunctive relief under 29 USC § 1132 (a)(3) to declare Hoyt retroactively eligible and requiring PacificSource to cover both past and future ABA therapy. PacificSource objected and filed a motion to amend the findings and judgment, contending that the court erred by concluding that PacificSource breached its fiduciary duty. In its September 28, 2010 Opinion and Order ("September 2010 Order") (docket #118), the court adhered to its prior ruling that PacificSource breached its fiduciary duty, but denied McHenry's request to file an amended complaint. In so finding, the court concluded that PacificSource would be prejudiced by an amendment since the issue of whether it breached its fiduciary notice

2 - OPINION

obligations was not tried by the parties' informed consent. In addition, amendment would be futile because McHenry did not seek § 1132(a)(3) equitable relief, but sought retroactive monetary damages. The court declined to retroactively declare Hoyt an eligible provider or to remand to the claims administrator, and instead awarded benefits only for the therapy provided by Hoyt on and after February 5, 2010, the date she became an eligible provider. The court asked the parties to submit a stipulated statement of past due benefits.

On January 11, 2011, the parties filed a stipulation that McHenry was entitled to reimbursement of $6,400.00 from PacificSource under the terms of the Plan for ABA therapy provided by Hoyt from February 5, 2010, through the September 2010 Order. Accordingly, on January 12, 2011, the court entered an Amended Judgment (docket #128) requiring defendants to reimburse McHenry in that amount "and for such therapy provided in the future during the applicable coverage period."

McHenry has now filed a Motion for Order of Civil Contempt and Sanctions (docket #152) based on an alleged failure by PacificSource to comply with the September 2010 Order and Amended Judgment. At a hearing on July 19, 2010, this court denied that motion. This Opinion further explains the basis for that ruling.

### STANDARD

Pursuant to FRCP 70(e), the court has the authority to punish contempt of court. Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Go-Video, Inc. v. The Mot. Picture Ass'n of Am.,* 10 F3d 693, 695 (9th Cir 1993). "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite

3 - OPINION

order of the court." *In re Dyer*, 322 F3d 1178, 1190-91 (9th Cir 2003). The party's violation

"need not be willful," and there is no good faith defense to civil contempt. *Go-Video*, 10 F3d at

695, quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F2d 1361, 1365 (9th Cir 1987).

However, substantial compliance based on a reasonable interpretation of the court order is a

defense to civil contempt. *Id*. The penalties for civil contempt are designed to compel

compliance with the court order or to compensate the contemnor's adversary for any damages

resulting from the contemptuous behavior. *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702

F2d 770, 778 (9th Cir 1983).

## DISCUSSION

McHenry seeks an order finding PacificSource in contempt for failure to comply with the

September 2010 Order and Amended Judgment, both of which require PacificSource to

reimburse McHenry for J.M.'s ABA therapy. Specifically, she alleges that just one month after

the September 2010 Order, PacificSource amended the Plan to exclude Hoyt as an eligible

provider, thereby disrupting her son's care and requiring her to engage two new providers to

provide his ABA therapy. She further alleges that PacificSource has since failed to pay the full

amount of the billed charges of the new providers and to fully respond to her inquiries regarding

the applicable billing codes and reimbursement rates. As sanctions, McHenry asks the court to

order PacificSource to:

> (1) issue payment within five days that fully reimburses her for all ABA
> therapy provided by Sarah Schaefer ("Schaefer") and Joanna Miller-Vogl
> ("Miller-Vogl"), from October 1, 2010, through May 23, 2011, in the
> unpaid amount of $6,491.09;

(2) issue payment fully reimbursing her for all ABA therapy provided by Schaefer and Miller-Vogl after May 23, 2011, at the rate of 100 percent of the billed charge, reduced by a $35.00 copay for each date of service;

(3) pay her reasonable attorney fees and costs incurred by her counsel's attempts to confer with PacificSource regarding its alleged violation of the September 2010 Order and Amended Judgment, in the amount of $4,600; and

(4) pay her McHenry's reasonable attorney fees and costs incurred in conjunction with bringing this motion, in the amount of $7,750.

PacificSource responds that McHenry's allegations are outside of the scope of the directives imposed by the September 2010 Order and Amended Judgment and that no factual basis exists to support her allegations. This court agrees with PacificSource.

## I. Reimbursement for ABA Therapy

It is undisputed that PacificSource has reimbursed McHenry for the ABA therapy provided by Hoyt through September 28, 2010, as required by the Amended Judgment. At issue is whether PacificSource has failed to fully reimburse McHenry and her providers for all claims after September 28, 2010, at the rate required by the Plan.

The Plan distinguishes between participating and nonparticipating providers. Participating providers are not permitted to bill a PacificSource member for any amount above the contracted reimbursement rate or allowable fee. O'Bryant Decl. (docket #168), ¶ 6; McHenry Decl. (docket #154), Ex. A, pp. 35-36 (§§ 6.1 & 6.2). In contrast, nonparticipating providers may bill a member at higher rates, but the member is then responsible for the paying difference between the billed amount and the allowable fee paid by PacificSource. *Id*.

The Plan includes a "Network Not Available" ("NNA") provision, which allows a member to engage a nonparticipating provider for a medical service or supply when the member

does not have "reasonable geographic access to a participating provider" for that service.  It

provides as follows:

> **6.3.1 Network not available.**  In areas where the member does not have
> reasonable access to a participating provider, PacificSource will make
> payment to a nonparticipating provider of that service at the percentage
> stated in the Schedule for Network Not Available if access to the
> nonparticipating provider is better than access to the nearest participating
> provider of those services.  *In those cases, eligible charges of the
> nonparticipating provider are based on the allowable fee.*

> **6.3.2 Reasonable access.** "Reasonable access"is based on geographical
> accessibility of the PacificSource participating provider network to the
> member. If services are reasonably available from a participating provider
> and a member chooses to seek treatment from a nonparticipating provider,
> benefits are paid at the percentage stated in the Schedule for
> nonparticipating providers. In no case does the percentage of payment to a
> nonparticipating provider exceed the percentage stated in the Schedule for
> Network Not Available.

McHenry Decl., Ex. A, p. 36 (emphasis added).

In November 2010, McHenry engaged Schaefer and Miller-Vogl to provide J.M.'s ABA

therapy.[1]  McHenry Decl., ¶ 1, Ex. A, p. 44; Schaefer Decl. (docket #155), ¶ 2; Miller-Vogl Decl.

(docket #156), ¶ 2.  Neither provider has elected to pursue the application process to join

PacificSource's network of participating providers.  O'Bryant Decl., ¶ 8.  The parties agree that

Schaefer and Miller-Vogl are nonparticipating providers and that the NNA provision applies to

their charges.  Therefore, PacificSource is obligated to pay the charges of Schaefer and Miller-

Vogl "based on the allowable fee."  The issue between the parties is the amount of the allowable

fee.

---

[1]  The change in providers was necessitated by an amendment to § 8.36 of the Plan which requires providers to be
"licensed by the state in which services are provided."  Hoyt was not licensed by the State of Oregon where she provided services
to J.M.  Although McHenry speculates that this amendment was an attempt to avoid paying for Hoyt's services, PacificSource
has submitted evidence that the amendment was made in response to an unrelated situation in which an out-of-state provider was
seeking reimbursement for unbundled service that it was not licensed to provide in Oregon.  Kernutt Decl. (docket #167), ¶ 14.

McHenry claims that PacificSource has been paying a lower allowable fee than the Plan

requires.  The Plan defines the allowable fee in Section 1.2 as follows:

> **Allowable fee** is the dollar amount established by PacificSource for
> reimbursement of charges for specific services or supplies provided by
> nonparticipating providers.  PacificSource uses several sources to
> determine the allowable fee.  Depending on the service or supply and the
> geographical area in which it is provided, the allowable fee may be based
> on data collected from the Centers for Medicare and Medicaid Services
> (CMS), Viant Health Payment Solutions, PacificSource Health Plans, or
> other nationally recognized databases.
>
> *Where the provider network is deemed adequate*, the allowable fee for
> professional services is based on PacificSource's standard participating
> provider reimbursement rate or a contracted reimbursement rate.  *Outside
> the PacificSource service area and in areas where the participating
> provider network is not deemed adequate*, the allowable fee is based on the
> usual, customary, and reasonable charge (UCR) at the 85th percentile.
> UCR is based on data collected for a geographic area.  Provider charges for
> each type of service are collected and ranked from lowest to highest.
> Charges at the 85th position in the ranking are considered to be the 85th
> percentile.

McHenry Decl., Ex. A, p .9 (emphasis added).

This provision provides two formulas for calculating allowable fees.  The first is used

where the "provider network is deemed adequate"[2] and is based on the "standard participating

provider reimbursement rate or a contracted reimbursement rate."  The second is used when the

"participant provider network is not deemed adequate" and is based on the UCR at the 85th

percentile.

McHenry claims that PacificSource should be paying an allowable fee under the second

formula based on the UCR, but is instead paying a lower allowable fee under the first formula

---

[2]  Although not specifically stated, the "provider network" apparently is the participating provider network.

7 - OPINION

based on the "standard participating provider reimbursement rate or a contracted reimbursement rate." She has requested documentation about the amount of the allowable fee and how it is calculated, but claims that PacificSource has not provided a clear answer, thereby necessitating the filing of this motion.

PacificSource disagrees and contends that, as required by the Plan, it is paying the allowable fee (less the $35 copay) under the first formula based on the participating provider reimbursement rate. According to PacificSource, when the NNA provision applies, a nonparticipating provider is paid at the same rate as a participating provider, instead of the lower rate that otherwise applies to nonparticipating providers if the NNA provision is inapplicable.[3] O'Bryant Decl., ¶ 7. Although not submitted to the court, PacificSource has produced to McHenry the proprietary document containing those rates. Shaw Decl. (#158), ¶ 7 & Ex. A.

PacificSource has consistently stated this position in response to McHenry's inquiries. As discussed below, in a letter dated February 15, 2008, McHenry requested several categories of documents from PacificSource. Request No. 8 sought "[a]ll data received from any source relating to the calculation of the applicable usual and customary rate and/or allowable fee, and/or for the 85th percentile for [ABA therapy services]." Glor Decl. (docket #157), Ex. A, p. 3. PacificSource sent a letter explaining its production in response to each document request. Specifically regarding Request No. 8, PacificSource stated that "[t]he UCR is not applicable in this situation and, therefore, no such documents are provided. This particular issue is discussed in more detail *infra*." Shaw Decl., Ex. A, p. 3. PacificSource included similar explanations in

---

[3] This interpretation is not obvious from the Plan language, but appears to favor McHenry.

8 - OPINION

response to several other document requests that requested information about the UCR.  *Id*, pp.

3-5.  The record does not include any further discussion of PacificSource's determination that the

UCR is inapplicable.  Regardless, PacificSource's responses are clear that it has not used the

UCR to determine the allowable fee.

McHenry contends that the allowable fee should be calculated based on the UCR because

the participating provider network for ABA therapy is "not adequate" for purposes of the

allowable fee.  This contention arises from the lack of any participating providers of ABA

therapy available for J.M..  In support, she cites to a list of all the health professionals that do not

provide ABA therapy, as compiled by McHenry's husband from the provider list supplied by

PacificSource.  SR 253.[4]  She also points out that by its very terms, the NNA provision only

applies when the insured does not have "reasonable access to a participating provider."  If she

does not have reasonable access to a participating provider, then she argues that, *ipso facto*, the

participating provider network cannot be adequate.

PacificSource responds that McHenry is defining the participating provider network too

narrowly to include only those providers of ABA therapy.   To determine the extent of a

participating provider network for a particular service, PacificSource relies on the CPT codes

produced by the American Medical Association which providers place on their bills to describe

the service provided.  Kernutt Decl., ¶ 15.  ABA therapy is a new service that is not licensed by

most states, including Oregon, and it does not have a separate CPT code.  *Id*, ¶ 14.  The bills

from Schaefer and Miller-Vogl contain CPT codes to describe their services.  Schaefer Decl., ¶ 4

& Ex. B (box 24).  Those codes are for general health and behavior intervention services which

---

[4]  "SR" refers to the stipulated record filed by the parties on May 22, 2009 (docket #46).

necessarily include a much wider array of services than just ABA therapy.  According to

PacificSource, the Portland area has many participating providers who provide the services

described by those same CPT codes, such that the participating provider network for those

services is adequate.

McHenry makes a persuasive argument.  It seems odd that PacificSource would apply the

NNA provision because McHenry does not have "reasonable geographic access to a participating

provider," but base the allowable fee on a formula that first requires that the "provider network

[be] deemed adequate."  Despite this apparent contradiction, PacificSource's interpretation of the

allowable fee provision is not entirely unreasonable, especially in light of the fact that

PacificSource appears to be promptly processing and paying Schaefer and Miller-Vogl's bills for

J.M's ABA therapy.

According to PacificSource, Schaefer and Miller-Vogl have submitted charges to

PacificSource in the amount of $34,950.00 for ABA therapy provided from November 2010,

through June 21, 2011.  O'Bryant Decl., ¶ 9.  Of that amount, PacificSource calculates the

allowable fees as $26,539.04.  *Id*.  Of those allowable fees, it has paid or is paying $24,299.04,

and the remaining $2,240.00 represents McHenry's copayments.  *Id*.  PacificSource recently

discovered a system-wide error in the processing of over 6,800 claims from a variety of

providers, including Schaefer and Miller-Vogl, which resulted in payment at "slightly lower rates

than they should have been paid."  *Id*, ¶ 13.  Consequently,  PacificSource will make an

additional payment to Schaefer and Miller-Vogl for past services rendered in the amount of

$6,356.35.  *Id*.  This amount is included in the allowable fee calculation of $26,539.04.  At the

time she filed her motion, McHenry claimed that PacificSource has failed to reimburse her for

ABA therapy from October 1, 2010, through May 23, 2011, in the amount of $6,491.09.

However, that amount fails to account for the additional $6,356.35 reprocessing payment. After

this additional payment is made, the amount in dispute is only about $135.00. At oral argument,

PacificSource also represented that its calculation of the allowable fee exceeds any amount that

would be due under the second formula in the NNA provision based on the UCR.

McHenry also points to the fact that PacificSource initially paid 100% of Schaefer and

Miller-Vogl's charges for the first claim, thereby providing support for her argument that it is

responsible for 100% of the billed charges. PacificSource has paid subsequent bills at varying

rates from 36.6% to 51.3% of billed charges, with no justification for these variances.

PacificSource admits that it overpaid McHenry's first claim at 100% of the total billed amount,

rather than 100% of the allowable fee minus McHenry's copay. *Id*, ¶ 10. On December 3, 2010,

PacificSource communicated this mistake to at least one of the providers, Schaefer, and advised

that while it would not seek any refund or offset of the overpayment, it would only pay the

allowable fee in the future. *Id.*; Healy Decl. (docket #169), Ex. B, p. 1. It appears clear that the

initial overpayment was a billing error, not an admission that PacificSource is responsible for

100% of the billed charges.

Keeping in mind that McHenry's carries the burden to show that PacificSource has

violated the September 2010 Order and Amended Judgment by clear and convincing evidence,

the court cannot conclude, at this juncture, that PacificSource is in contempt by failing to

reimburse McHenry for ABA therapy provided during the coverage period. Sanctions are not

appropriate on the grounds that PacificSource has failed to pay 100% of the billed charges

submitted by McHenry's ABA therapy providers. The plain language of the Plan requires only

that PacificSource pay the allowable fee for ABA therapy provided by Schaefer and Miller-Vogl.

While there may be room to disagree about how to calculate the allowable fee, so long as

PacificSource is in substantial compliance based upon a reasonable interpretation of the court's

order, sanctions are not appropriate under FRCP 70(e).  *See Go-Video*, 10 F3d at 695.

PacificSource indeed appears to be in substantial compliance with its reasonable interpretation of

this court's order, since it has consistently paid what it considers to be the allowable fee for

J.M.'s ABA therapy.

However, neither party includes any documentation about what, exactly, the allowable fee

is for ABA therapy, making it difficult to conclude that PacificSource has actually fulfilled its

obligation by paying the full amount that it is responsible for under the terms of the Plan.

Therefore, this court has ordered the parties to confer within 30 days to resolve their differences.

If they are unable to do so, then McHenry will need to pursue the appropriate remedy to enforce

her interpretation of the Plan.

## II.  <u>PacificSource's Responsiveness to McHenry's Document Requests</u>

McHenry further contends that PacificSource violated the court's September 2010 Order

and Amended Judgment by failing to provide documents relating to its billing codes and

reimbursement rates, thereby frustrating her efforts to be reimbursed for the full amount of J.M.'s

ABA therapy.   PacificSource contends that it provided all information requested.  In any event, it

argues that it cannot be held in contempt because neither the September 2010 Order or the

Amended Judgment required it to satisfactorily communicate with McHenry about its billing and

reimbursement methods.

According to McHenry, once PacificSource stopped paying 100% of Schaefer and Miller-Vogl's billed amounts for J.M.'s ABA therapy, McHenry sent a letter on February 15, 2011, requesting PacificSource to provide her with "all documents relating to the methodology PacificSource has used in determining the amount . . . paid or covered with respect to the ABA therapy services provided to [J.M.]," including "all data sources used in determining the usual and customary rate and/or allowable fee for ABA therapy services." Glor Decl., ¶ 2, Ex. A; Kernutt Decl., ¶ 6. In response, on March 17, 2011, PacificSource produced 198 pages of documents, which in McHenry's counsel's estimation, were not fully responsive to McHenry's request. Glor Decl., ¶ 5, Ex. B; Kernutt Decl., ¶ 7. Shortly thereafter, on April 6, 2011, McHenry's counsel sent another letter, informing PacificSource that it had not produced documents responsive to the original request, and seeking eleven additional categories of documents. Glor Decl., ¶ 5, Ex. C; Kernutt Decl., ¶ 8.

On May 6, 2011, PacificSource provided a letter of explanation regarding the initial document production, produced three additional documents, and offered to meet with McHenry's counsel to explain the documents and explain how it calculates reimbursement. Kernutt Decl., ¶¶ 9, 11; Shaw Decl., ¶¶ 5-7, Ex. A; Hansen Decl. (docket #166), ¶3. The parties agreed to meet on May 18, 2011, but on May 17, 2011, PacificSource asked to reschedule because it had concerns about the accuracy of one single-page document that had been produced. Kernutt Decl., ¶ 12; Shaw Decl, ¶¶ 5, 8, Ex. B; Hansen Decl., ¶ 4. PacificSource indicated that it would provide McHenry with the correct information prior to the new meeting. Shaw Decl., ¶¶ 8-9, Ex. B; Hansen Decl., ¶ 5. PacificSource resolved its concern and confirmed that the document was correctly provided. Kernutt Decl., ¶¶ 12-13. On June 13, 2011, PacificSource contacted

13 - OPINION

McHenry's counsel to reschedule the meeting.  Hansen Decl., ¶ 7.  The parties spoke by

telephone the following day, but McHenry did not wish to reschedule the meeting and instead

indicated that she would instead take the matter up with the court.  *Id*.  Two days later, McHenry

filed the current motion.  *Id*.

Based on this sequence of events, McHenry seeks to sanction PacificSource for

frustrating her efforts to be fully reimbursed for J.M.'s ABA therapy.  However, PacificSource

appears to have regularly communicated with McHenry regarding her concerns about billing

codes and reimbursement rates, as evidenced by the extensive document production and

communication between counsel.  PacificSource certainly communicated its willingness to

discuss its reimbursement rates with McHenry, but declined to produce all documents sought by

McHenry on the basis that they were not relevant.  Whether or not PacificSource's document

production was non-responsive as McHenry alleges, neither the September 2010 Order nor

Amended Judgment required PacificSource to communicate with McHenry in this way.  They

only required PacificSource to fully reimburse McHenry for the amount of J.M.'s ABA therapy.

As discussed above, PacificSource appears to have paid what it believes to be the allowable fee

and, thus, is in substantial compliance with its reasonable interpretation of the September 2010

Order and Amended Judgment.

To the extent that McHenry seeks sanctions based on PacificSource's failure to

communicate with her regarding the allowable fee, sanctions on this basis also are inappropriate.

McHenry first requested information about billing codes and reimbursement in February 2011,

and less than a month later PacificSource produced nearly 200 documents.  After that,

PacificSource communicated regularly with McHenry regarding additional document production

14 - OPINION

and scheduling a meeting to explain its reimbursement process.  The record does not support

McHenry's assertion that PacificSource's calculations were wholly inaccurate or that it delayed

meeting with her.  As noted above, PacificSource explained that it did not calculate the allowable

fee based on the UCR and declined to produce documents responsive to this request as being

irrelevant.  That McHenry disagrees with this determination is not sufficient grounds for

imposing sanctions on the basis of civil contempt.  Moreover, the record reflects that when the

parties conferred by telephone about rescheduling the meeting, it was McHenry who declined to

meet in favor of taking the issue to court.  McHenry's argument that PacificSource attempted to

frustrate her enforcement of the court's order that it reimburse McHenry for the cost of J.M.'s

ABA therapy, is based on a disagreement over what formula applies.  As discussed above, this is

not sufficient grounds to impose the sanctions requested.

## III.  Conclusion

This court can certainly understand McHenry's frustration in trying to determine whether

PacificSource has correctly calculated and paid the allowable fee.  Although perhaps slower to

respond than McHenry would prefer, PacificSource has not ignored McHenry's inquiries and has

submitted a reasonable explanation for its calculation.  The issue is complicated by the fact that

ABA therapy is new to PacificSource.  Although an imposition of sanctions is not warranted, the

parties are urged to continue to their efforts to communicate to resolve their differences.

DATED this 20th day of July 2011.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge